UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

SHERRI M.,

    Plaintiff,

v.

COMMISSIONER OF SOCIAL SECURITY,

    Defendant.

CASE NO. C18-5136 BAT

**ORDER AFFIRMING THE COMMISSIONER'S DECISION AND DISMISSING THE CASE WITH PREJUDICE**

Plaintiff appeals the denial of her applications for Disability Insurance Benefits. She contends the ALJ harmfully erred by misevaluating (**1**) the medical evidence; (**2**) plaintiff's testimony; and (**3**) lay testimony by a former work supervisor and by plaintiff's mother. Dkt. 13. The Court **AFFIRMS** the Commissioner's final decision and **DISMISSES** the case with prejudice.

## BACKGROUND

Plaintiff is currently 50 years old and has worked as an administrative clerk, a medical receptionist, a unit clerk, a medical records clerk, and a medical records technician. Tr. 35, 242. She alleges disability that began on **February 28, 2014**. Tr. 191. Utilizing the five-step disability evaluation process, the ALJ found, among other determinations, that plaintiff's severe impairments included morbid obesity, chronic cervical strain with degenerative disc disease at

ORDER AFFIRMING THE COMMISSIONER'S DECISION AND
DISMISSING THE CASE WITH PREJUDICE - 1

C4–5, lumbar degenerative disc disease at L5-S1 with left sciatic pain, diabetes mellitus type II, bipolar disorder, PTSD, insomnia, and migraine headaches; that plaintiff has the residual functional capacity ("RFC") to perform a range of light work with various physical, social, and mental restrictions; and, although plaintiff could not return to her past relevant work, that her RFC permitted her to perform jobs that exist in significant numbers in the national economy. Tr. 18–37. The ALJ therefore concluded that plaintiff was not disabled from the alleged onset date of February 28, 2014, through the date of the decision. Tr. 37.

## DISCUSSION

The Court will reverse the ALJ's decision only if it was not supported by substantial evidence in the record as a whole or if the ALJ applied the wrong legal standard. *Molina v. Astrue*, 674 F.3d 1104, 1110 (9th Cir. 2012). The ALJ's decision may not be reversed on account of an error that is harmless. *Id.* at 1111. Where the evidence is susceptible to more than one rational interpretation, the Court must uphold the Commissioner's interpretation. *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002).

Plaintiff contends that the ALJ harmfully erred by misevaluating the medical record, plaintiff's testimony, and lay testimony by a former work supervisor and by plaintiff's mother. She offers, however, little to challenge the reasonableness of the ALJ's interpretation aside from arguing that the record should have been examined in the light most favorable to plaintiff. The Court finds that the ALJ's decision was supported by substantial evidence and was free of harmful legal error.

1. **Medical Evidence**

Plaintiff takes a shotgun approach in challenging the ALJ's interpretation of the medical evidence, asserting that the medical evidence that suggested disability should have been credited

and the evidence that contradicted disability should have been discounted. The Court finds that plaintiff's conclusory argumentation does not undermine the reasonableness of the ALJ's interpretation of the medical evidence.

Where, as here, there is conflicting medical evidence, the ALJ must determine credibility and resolve the conflict. *Thomas*, 278 F.3d at 956–57. The ALJ gave great weight to the opinions of examining psychiatrist Jennifer Shannon, M.D., examining physician Donna Moore, M.D., non-examining psychologist Jan Lewis, Ph.D., non-examining psychologist Vincent Gollogly, Ph.D., and non-examining physician Alnoor Virji, M.D., citing treatment and examination notes that supported these opinions and discounting the acceptable medical and "other source" opinions that conflicted with those of Drs. Shannon, Moore, Lewis, Gollogly, and Virji. Tr. 24–35. The Court therefore examines whether the ALJ cited specific and legitimate reasons for discounting doctors' opinions that contradicted those of Drs. Shannon, Moore, Lewis, Gollogly, and Virji and cited germane reasons for discounting "other sources" such as plaintiff's counselor and chiropractor. *Molina v. Astrue*, 674 F.3d 1104, 1111 (9th Cir. 2012). To the extent the ALJ gave a valid reason supported by substantial evidence to discount the acceptable medical and other opinions, the Court need not discuss the other reasons the ALJ provided. Even assuming the other reasons are erroneous, the errors would be harmless. *See Carmickle v. Comm'r, SSA*, 533 F.3d 1155, 1162 (9th Cir. 2008) (including an erroneous reason among other reasons to discount a claimant's credibility does not negate the validity of the overall credibility determination and is at most harmless error where an ALJ provides other reasons that are supported by substantial evidence).

With respect to mental limitations, the ALJ gave great weight to examining psychiatrist Dr. Shannon's July 2016 opinion because Dr. Shannon had performed an exhaustive historic

ORDER AFFIRMING THE COMMISSIONER'S DECISION AND
DISMISSING THE CASE WITH PREJUDICE - 3

review and a thorough examination, and the opinion was consistent with her clinical findings. Tr. 34–35. Dr. Shannon opined that plaintiff's current psychiatric status, given its stability, was not impacting her current daily functioning. Tr. 812. Dr. Shannon noted that plaintiff had a longstanding history since the age of 10 years of depressive episodes in the context of her bipolar disorder, that it was likely that she experienced an increase in depressive and anxiety symptoms after her car accidents in 2011 and 2013 secondary to the pain and limitations the accidents caused, and that her depression and anxiety had stabilized with medication and psychotherapy. Tr. 810–11. The ALJ gave great weight to the October 2014 opinion of non-examining psychologist Dr. Lewis and to the January 2015 affirming opinion of Dr. Gollogly because the doctors' opinions were consistent with the overall record; for example, they were consistent with certain observations and clinical assessments about reasoning, insight, memory, attention, and concentration made by examining psychologist Marsha Hedrick, Ph.D., treating nurse practitioner Molly Henderson, A.R.N.P., and examining psychiatrist Dr. Shannon  Tr. 34. Drs. Lewis and Gollogly opined that plaintiff could complete a regular workday/workweek performing routine tasks with occasional difficulty due to depressive symptoms and was able to interact on an occasional basis with the general public and coworkers due to depressive symptoms. Tr. 99–100, 114–15.

With respect to physical limitations, the ALJ gave great weight to examining physician Dr. Moore because Dr. Moore conducted an exhaustive historic review and a thorough examination, and her opinion was consistent with her clinical findings and the record as a whole. Tr. 28. Dr. Moore opined: "I feel the examinee, with appropriate treatment, should not be fully disabled. I think that she should be able to return to gainful employment but needs intensive rehabilitation and will be able to perform light duty/sedentary work." Tr. 831. Dr. Moore further

noted: "I think the plaintiff will be able to return to light duty/sedentary work with proper treatment and sleep restoration." Tr. 831. The ALJ also gave great weight to non-examining physician Dr. Virji because Dr. Virji reviewed the medical evidence and his opinion was consistent with the overall record; for example, Dr. Virji's opinion was consistent with the clinical observations regarding range of movement, pain, and strength made by treating neurologist Gregory Bell, M.D., and treating neurosurgeon Yoshihiro Yamamoto, M.D. Tr. 35. Dr. Virji opined that plaintiff could stand and walk 4 hours in an 8-hour workday and sit for 6 hours in an 8-hour workday with certain physical restrictions. Tr. 112.

The Court finds that to the extent the ALJ discounted examining medical opinions for being based on a "one-time exam," *see, e.g.*, Tr. 33 (referring to Dr. Hedrick), that rationale was not a specific and legitimate reason. In general, examining doctors see claimants one time and that fact, in and of itself, does not constitute a legitimate reason for rejecting an examining doctor's opinion. Nonetheless, the ALJ's rejection of examining opinions for being, by definition, examining opinions constituted harmless error because the ALJ stated at least one specific and legitimate reason for discounting the medical and other opinions that contradicted her RFC determination and the opinions of Drs. Shannon, Moore, Lewis, Gollogly, and Virji.

The ALJ credited examining psychologist Dr. Hedrick's opinion that plaintiff could perform tasks that require concentration and had average persistence in the face of difficulty but discounted Dr. Hedrick's opinion regarding social functioning. Tr. 33. The ALJ gave only some weight to Dr. Hedrick's opinion because it was based on a limited document review, the assessment of social functioning was not consistent with claimant's daily activities including

shopping in stores, attending church,[1] and contacting clients on the phone, and was vague and did not specifically describe plaintiff's level of functioning. Tr. 33, 501. The ALJ gave less weight to the opinion of examining psychiatrist Erum Khaleeq, M.D., and more weight to the contradictory opinion of examining psychiatrist Dr. Shannon because while Dr. Khaleeq's review of the record was limited, Dr. Shannon's review of the record was exhaustive and accompanied by a thorough examination. Tr. 35; *compare* Tr. 552 (Dr. Khaleeq noting that his review of the records involved "[a] medical source statement of ability to do work-related activities, mental" and "[t]here are some reports of mental evaluation completed by Dr. Marsha Hedrick, PhD, back in September 2014") *with* Tr. 804–11 (Dr. Shannon setting forth and analyzing by each dated entry records from November 2010 to June 2015, noting the incomplete nature of the psychiatric findings, and noting that she would file an addendum once more psychiatric records were received). The ALJ discounted the opinion of significant physical limitations made by examining physician Joyce Luteyn, M.D., because it was conclusory and provided without supporting objective evidence, appeared to rely solely on plaintiff's self-report of symptoms and limitations, was inconsistent with the clinical findings of treatment providers and examiners, was made without the benefit of a complete medical history, and referred to plaintiff reporting 15 migraines per month without plaintiff mentioning that her Botox therapy for migraines had just been restarted and had unquestionably alleviated the symptoms and frequency of her migraines. Tr. 33, Tr. 504–11. The Court finds that the ALJ reasonably

---

[1] Although plaintiff asserts that she ceased attending church, in her self-report of June 2014, i.e., three months after her alleged onset date, she stated that she attended church every other week. Tr. 274. That contradicts plaintiff's statement to Dr. Hedrick that she ceased attending church after her first car accident in 2011. Tr. 501.

interpreted the opinions of Drs. Hedrick, Khaleeq, and Luteyn, and that the above-stated reasons for discounting those opinions were specific, legitimate, and supported by the record.

The ALJ discounted the opinion of plaintiff's counselor Christine Lebeau, M.A., regarding mental limitations because the narrative opinion included "symptoms not recorded in the counselor's very limited treatment notes," and the reliability of Ms. Lebeau's conclusions were undercut by Dr. Shannon's assessment that the treatment notes contained inadequate specificity. Tr. 34, 541. Dr. Shannon reviewed Ms. Lebeau's treatment notes and remarked: "These notes are limited with regards to psychiatrically relevant information regarding specific depression, anxiety, posttraumatic stress disorder symptomatology or severity . . . ." Tr. 804. The ALJ discounted the opinion of treating chiropractor Craig Cheple, D.C., regarding physical limitations because it was conclusory and vague, providing little information about the evidence relied upon and not specifically describing plaintiff's level of functioning. Tr. 33, 450. The Court finds that the ALJ reasonably interpreted the opinions of Ms. Lebeau and Mr. Cheple and that the above-stated reasons for discounting those opinions were germane and supported by the record. Thus, it was harmless error for the ALJ to have implied that the opinions of Ms. Lebeau and Mr. Cheple were rejected because they were not acceptable medical sources.

Plaintiff argues that in assessing RFC the ALJ erroneously declined to account for Dr. Shannon's statement that, although her longstanding psychiatric condition is stable, plaintiff "requires ongoing treatment, including psychiatric and psychotherapeutic interventions," Tr. 813, and Dr. Moore's statement that plaintiff needed appropriate treatment and sleep therapy to return to light/sedentary work, Tr. 831. The Court disagrees. Plaintiff has not demonstrated that she is incapable of receiving adequate treatment. There is therefore no indication that the ALJ erred by not including in the RFC a requirement that plaintiff receive ongoing treatment before or after

becoming employable. *See, e.g.*, *Warre v. Comm'r of SSA*, 439 F.3d 1001, 1006 (9th Cir. 2006) ("Impairments that can be controlled effectively with medication are not disabling for the purpose of determining eligibility for SSI benefits."). Neither Dr. Shannon nor Dr. Moore equivocated about plaintiff's ability to work if receiving proper treatment. Dr. Shannon stated, "I do not believe that her current psychiatric status, given it is stable, is impacting her current daily functioning." Tr. 812. Dr. Moore stated, "I feel the examinee, with appropriate treatment, should not be fully disabled." Tr. 831.

To the extent plaintiff asserts generally that the medical evidence supporting disability should be credited and any evidence supporting the ALJ's RFC assessment should be disregarded, the Court may not reverse because plaintiff's interpretation differs from the ALJ's reasonable interpretation of the medical evidence. The ALJ supported her evaluation of the medical record with substantial evidence and this evaluation was free from harmful legal error.

2. **Plaintiff's Testimony**

Plaintiff contends that the ALJ improperly discounted her testimony. The Court disagrees.

Once there is a medically determinable impairment that could reasonably be expected to cause a claimant's symptoms, specific, clear and convincing reasons are needed to reject a claimant's testimony if there is no affirmative evidence of malingering. *Lester v. Chater*, 81 F.3d 821, 834 (9th Cir. 1996). The ALJ discounted the severity of plaintiff's symptom testimony because it was inconsistent with (**1**) the medical evidence, (**2**) her work history and daily activities, and (**3**) her other testimony in the record.

First, the ALJ noted the medical evidence that plaintiff could perform the mental and physical demands of the assessed RFC. Tr. 28–32. With respect to physical limitations, the ALJ

discounted plaintiff's stated symptoms by noting that treating neurologist Dr. Bell repeatedly referred to largely unremarkable examinations; treating nurse practitioner Ms. Henderson consistently found normal gait and station; treating neurosurgeon Dr. Yamamoto found certain symptoms but generally remarked on an unremarkable physical examination; and Dr. Moore, while referring to certain symptoms, opined that she could return to light/sedentary work. Tr. 28–29, 377–96, 413–33, 695–716, 796–98, 814–33. With respect to mental limitations, the ALJ discounted plaintiff's stated symptoms by noting that the treatment and examination notes by nurse practitioner Ms. Henderson, Dr. Shannon, Dr. Khaleeq, and Dr. Hedrick demonstrated that plaintiff's presentation, social functioning, and mental status examinations were consistent with working in a setting with occasional public and coworker contact and with an ability to understand, remember, and carry out simple instructions for tasks performed in a setting with a predictable routine. Tr. 29, 413–33, 498–502, 552–57.

Second, the ALJ noted that plaintiff's work history and daily activities were not consistent with her stated mental and physical limitations. The ALJ noted that plaintiff had a fifteen-year history of working with the psychological diagnoses and migraines she now complains of and she continues to be involved in the family business by preparing invoices, bookkeeping, preparing tax returns, corresponding with clients, and buying office supplies. Tr. 29–33, 50–52, 219. Moreover, plaintiff reported daily activities as diverse as preparing meals daily; performing household chores such as dishwashing, laundry, watering plants, filling a birdfeeder, vacuuming, sweeping, and mopping; going outside alone, driving a car, and shopping in stores weekly for food; engaging in hobbies such as reading, writing, singing, researching, bird watching, drawing, painting, crafts, and games; reading, writing, and singing; watching movies four to five times a week; seeing friends two times a month; emailing her stepdaughter

daily and other friends weekly; going to church, weekly self-help meetings, and doctor appointments; walking 20 minutes four times per week; and exercising 25 minutes on a stationary bike every other day. Tr. 32, 272–74, 292, 625, 672.

Third, the ALJ noted internal inconsistencies in plaintiff's testimony that undermined the reliability of her testimony about the severity of her symptoms. Plaintiff reported having no problems getting along with others and that she got along with authority figures "quite well." Tr. 29, 293–94. Plaintiff reported to Dr. Shannon in 2016 that although she began to have anxiety and panic symptoms in high school, and was diagnosed with depression and anxiety in the 1990s, she very rarely experienced panic attacks presently and had been psychiatrically stable for two years. Tr. 800–02. Moreover, although plaintiff testified that her mental limitations and migraines rendered her debilitated even during the 15 years she was employed full-time and presumably was *not* disabled, she acknowledged to treating physician Dr. Bell that Botox therapy for her migraines was effective and she was "ecstatic over her improvement in the improvement in the quality of life," moving from almost daily migraines to one or two per week. Tr. 31, 531. At the hearing, plaintiff acknowledged that she had suffered from migraines for 15 years but "[w]ith treatment, they've gotten better." Tr. 65.

The Court finds that all three of the ALJ's stated reasons for discounting plaintiff's testimony are specific, clear, and convincing. Although plaintiff invites the Court to adopt her interpretation of her testimony, the ALJ did not harmfully err as a matter of fact or law by making reasonable inferences from the record and discounting plaintiff's symptom testimony.

3. **Lay Testimony**

Plaintiff argues that the ALJ harmfully erred by not stating a reason for rejecting a statement by plaintiff's work supervisor Deana Seeley and by failing to state a germane reason

for discounting statements by plaintiff's mother Norma Weston. The Court disagrees.

The ALJ did not address Ms. Seeley's August 19, 2013 lay statement that plaintiff continued to have physical and mental issues stemming from a May 2013 accident that prevented her from working full-time, including muscle spasms interfering with the ability to sit for long periods, pain from the required, repetitive typing, and memory and clarity issues. Tr. 459. The Court finds that any error the ALJ made in failing to address Ms. Seeley's lay statement was harmless. First, Ms. Seeley's statement was made more than 6 months prior to the alleged onset date and during a period in which it is presumed that plaintiff was not disabled. Second, no one disputes that plaintiff cannot return to her previous relevant work. Third, plaintiff has failed to demonstrate that Ms. Seeley's statement is inconsistent with the assessed RFC.

The ALJ discounted Ms. Weston's statements because they were inconsistent with the medical evidence and with plaintiff's reported level of activity. As discussed earlier, these rationales constitute germane reasons to reject Ms. Weston's statements.

The Court finds that the ALJ did not harmfully err as a matter of fact or law by not addressing Ms. Seeley's lay testimony and by discounting Ms. Weston's lay testimony.

## **CONCLUSION**

For the foregoing reasons, the Commissioner's decision is **AFFIRMED** and this case is **DISMISSED** with prejudice.

DATED this 16th day of January, 2019.

_____
BRIAN A. TSUCHIDA
Chief United States Magistrate Judge